# Commonwealth ex rel., Appellant, *v.* City of Wilkes-Barre et al.

*Statutes—Construction—Intention.*

1. Where there is an apparent conflict between different parts of a statute, the general purpose of the legislature must be considered and, if the language will permit, such construction must be applied as will give effect to every part of the law. A statute will not be

construed so as to defeat the object of the legislature if it can rea-
sonably be avoided.

2. Literal construction of the language of a part of an act can-
not prevail if another interpretation is clearly deducible which will
better effect the manifest purpose of the general legislative intent.

3. It is presumed, as well on the ground of good faith as on the
ground that the legislature would not do a vain thing, that it in-
tends its acts and every part of them to be valid and capable of
being carried out.

*Municipalities—Cities of third class—Ordinance—Petition for
repeal or referendum—Sufficiency—Refusal to reconsider—Act of
June 27, 1913, P. L. 568, Secs. 19 and 20—Mandamus.*

4. A petition presented by electors of a city of the third class
protesting against the passage of an ordinance, and requesting its
reconsideration and repeal or submission to a vote of the city elec-
torate, is sufficient if in the form required by Article XX (the refer-
endum article) of the Act of June 27, 1913, P. L. 568, and need not
be prepared, signed and perfected in accordance with the provisions
of Article XIX (the initiative article) of the said act.

5. The city council of a city of the third class passed an ordi-
nance awarding a lighting contract to an electric company.    With-
in ten days a petition of qualified electors of the city, signed by
voters equal in number to more than twenty per cent. of the entire
number of votes cast for all candidates for mayor at the last pre-
ceding general·election at which a mayor was elected, was pre-
sented to council, protesting against the passage of the ordinance
and requesting its reconsideration and repeal, and if not repealed
that it be submitted to a vote of the people of the city.    The
council refused to reconsider the ordinance or submit it to a vote
of the electors.    The district attorney petitioned for a writ of man-
damus to compel the mayor and council to reconsider the ordinance
and to cause the same, if not repealed, to be submitted to the elec-
tors of the city.    The mandamus was refused on the ground that
the petition to council was defective in that the formalities re-
quired by Article XIX of the Act of 1913 had not been complied
with.    *Held,* that Article XIX did not apply to petitions of pro-
test against the passage of ordinances, but only to proceedings for
the initiation of legislation, and the order was reversed and a writ
of mandamus was awarded as prayed for.

Argued April 10, 1917.    Appeal, No. 57, Jan. T., 1917,
by relator, from judgment of C. P. Luzerne Co., March
T., 1917, No. 349, dismissing petition for peremptory

mandamus in case of Commonwealth of Pennsylvania Ex Relatione Frank P. Slattery, District Attorney of Luzerne County, v. John V. Kosek, Mayor, R. Nelson Bennett, Joseph P. Schuler, Fred Goeringer, and Martin C. Murray, Councilmen of the City of Wilkes-Barre. Before BROWN, C. J., MESTREZAT, POTTER, FRAZER and WALLING, JJ. Reversed.

Petition for mandamus. Before FULLER, P. J.

The facts appear by the opinion of the Supreme Court.

The lower court refused the mandamus. Relator appealed.

*Error assigned* was in refusing to grant the mandamus as prayed for.

*W. I. Hibbs,* for appellant.—The petition of protest is in proper form and meets all requirements of Article XX of the Act of June 27, 1913, P. L. 568, necessary to require its submission to council, and upon the submission of the protest to council it was its duty to reconsider the ordinance. It was not necessary for it to comply with the requirements of Article XIX.

Where possible to do so, the court will so construe an act that it will not be absurd, impossible of execution, or unreasonable: Baker v. Gartside, 86 Pa. 498; Hartman's App., 107 Pa. 327; Lancaster County v. Frey, 128 Pa. 593.

A statute is to be construed so that all parts of it shall stand, and no part be rejected or declared inoperative. For this reason it is a well settled rule of construction that every part of the statute must be brought into action in order to collect from the whole one uniform and consistent sense, if possible, and to avoid contradictions or inconsistencies between the different parts: West Branch Lumberman's Exchange v. Lutz & Zaring, 2 Pa. Superior Ct. 91.

*John T. Lenahan,* with him *C. F. McHugh,* for appellees.—The petition should have been prepared in accordance with the provisions of Article XIX of the Act of June 27, 1913, P. L. 568, and not having been so prepared council acted within its right in disregarding it.

OPINION BY MR. JUSTICE MESTREZAT, May 7, 1917:

This is an appeal by the relator from a judgment refusing to grant a writ of mandamus.

On October 3, 1916, the city council of Wilkes-Barre, a city of the third class, passed finally an ordinance awarding to the Wilkes-Barre Company a contract for lighting certain streets and public buildings of the city for the term of five years. Within ten days, a petition of qualified electors of the city, signed by voters equal in number to more than twenty per cent. of the entire number of votes cast for all candidates for mayor at the last preceding general municipal election at which a mayor was elected, was presented to and filed with the city council protesting against the passage of the ordinance and requesting its reconsideration and repeal by the council, and, upon failure of the council to repeal the ordinance, that the same be submitted to a vote of the people of the city, as provided in articles nineteen and twenty of the Act of June 27, 1913, P. L. 568. The council neglected and refused to reconsider the ordinance or to submit the same to a vote of the electors of the city. Thereupon, the district attorney of Luzerne County petitioned the court below for a mandamus upon the mayor and city councilmen of the City of Wilkes-Barre commanding them to reconsider the ordinance, and to cause the same, if not repealed, to be submitted to the electors of the city, as provided by the Act of 1913. The mandamus was refused on the ground, as stated in the opinion of the court, that the petition was not preceded by a written request of one hundred electors, prepared by the city clerk, and signed in his office on oath before him, as provided by article nineteen of the Act of 1913. In a concurring

opinion, one of the judges of the court joined in refusing the mandamus for the reason that article twenty "is so inconsistent and ambiguous that it ought to be declared inoperative."

The Act of June 27, 1913, P. L. 568, provides for the incorporation, regulation and government of cities of the third class. Article nineteen provides a method for inaugurating city legislation outside the council, and article twenty prescribes a method for submitting an ordinance to a vote of the electorate before it becomes effective. Article nineteen provides that any proposed ordinance may be submitted to the council by a petition signed by the electors of any city of the third class; and, "upon the written request of one hundred qualified electors, directed to the city clerk," he shall prepare such petition within ten days, and meanwhile notice shall be given by advertisement that the petition will be ready for signing at the expiration of the ten days. Ten days more shall be allowed for signatures. The signing shall be done in the city clerk's office only and the petition shall be retained there at all times during the period of ten days. Each signer shall add to his signature his place of residence and shall make oath before the city clerk that he is a qualified elector of the city and resides at the address given. At the end of the "ten days aforesaid," and within ten days thereafter, the clerk shall examine the petition and ascertain whether it is signed by voters equal to twenty per centum of all votes cast for all candidates for mayor at the last preceding election, and shall attach to the petition his certificate showing the result of said examination. If the petition shall be certified to contain twenty per centum of the votes cast, as aforesaid, the clerk shall submit the same to the council without delay.

Article twenty provides that "no ordinance passed by the council [with certain exceptions], shall go into effect before ten days from the time of its final passage; and if, during the said ten days,......a petition signed by

electors of the city equal in number to at least twenty
per centum of the entire votes for all candidates for
mayor at the last preceding......election at which a
mayor was elected, protesting against the passage of such
ordinance, be presented to the council, the same shall
thereupon be suspended from going into operation; and
it shall be the duty of the council to reconsider such ordi-
nance; and, if the same is not entirely repealed, the
council shall submit the ordinance, as is provided by sub-
section (b) of section one of article nineteen of this act,
to the vote of the electors of the city,......and such ordi-
nance shall not go into effect or become operative unless
a majority of the qualified electors voting on the same
shall vote in favor thereof.   Said petition shall be pre-
pared, signed and perfected in all respects in accordance
with the provisions of said section one of article nineteen,
and be examined and certified to by the clerk in all re-
spects as therein provided."

The position of the learned court below and of the ap-
pellees is that the petition of protest required by article
twenty must "be prepared, signed and perfected in all
respects in accordance with the provisions of article nine-
teen."   It is claimed that such is the plain requirements
of article twenty and that a compliance therewith is a
prerequisite to a demand for a referendum.   It is con-
ceded that the petition of protest presented to the council
was not prepared, signed and certified as required by ar-
ticle nineteen, and, therefore, it is contended that the
council properly refused to act upon it.

The relator maintains that the court misinterpreted
article twenty of the act in question, and that the peti-
tion of protest is not required to be signed and certified
in conformity with the provisions of article nineteen, and
that such signing and certification apply only to the pe-
tition required to be filed on the refusal of the council
to repeal the ordinance.   It is further claimed that to
apply the requirements of the initiative petition of ar-
ticle nineteen to the petition of protest in the referendum

article would make that part of the last named article inoperative and render it impossible of performance.

In considering certain articles, including nineteen and twenty, of the Act of 1913, in Commonwealth ex rel. Heinly, v. Marks, 248 Pa. 518, 522, it was said: "The act in question, like many other attempts to legislate upon advanced lines, gives evidence of having been drawn hastily and without any serious effort to coördinate its various parts; but, under such circumstances, it is the office of the judiciary to apply the established rules of law and construction, and, when possible, to reconcile the various legislative provisions, so that all may stand together and yet each operate within its own field." In cases where there is an apparent conflict between different parts of a statute, the general purpose of the legislature must be considered, and, if the language will permit, such construction must be applied as will give effect to every part of the law. A statute will not be construed so as to defeat the object of the legislature if it can reasonably be avoided. Literal construction of the language of a part of an act of assembly cannot prevail if another interpretation is fairly deducible which will better effect the manifest purpose of the general legislative intent. The purpose and intention of the whole statute, as derived therefrom, will control the interpretation of its several parts so that the whole may be made effective. It is presumed, as well on the ground of good faith as on the ground that the legislature would not do a vain thing, that it intends its acts and every part of them to be valid and capable of being carried out: 2 Lewis's Sutherland Stat. Con. (2d Ed.), Section 490. "It is the duty of the court," says AGNEW, C. J., in Mauch Chunk v. McGee, 81 Pa. 433, 437, "to reconcile the different parts of a law, if it can be reasonably done, rather than to declare any part void, and thus frustrate the legislative action."

If the petition of protest required by the referendum article of the act must be "prepared, signed and perfected" in accordance with the initiative article, the

clause of the article requiring the filing of the petition is incapable of performance and is, therefore, nullified. This is apparent from the provisions of the two articles in question. The referendum article suspends operation of the ordinance for ten days, "and if, during the said ten days,......a petition signed by not less than twenty per cent. of the electors of the city......protesting against the passage of such ordinance, be presented to the council, the same shall thereupon be suspended from going into operation." This protest must, therefore, be presented to the council within ten days from the final passage of the ordinance, or thereafter it is operative and is a law of the city. The proceedings to initiate legislation under article nineteen, as will be observed, require a written request of one hundred electors to be presented to the city clerk to prepare the petition. He has ten days to prepare the petition, and meanwhile must advertise notice that the petition will be ready for signing at the expiration of such ten days. Ten days more are allowed for signing, which shall be done in the city clerk's office. At the expiration of this period for signatures, "and within ten days thereafter," the clerk shall examine the petition, and if the requisite number of voters have not signed, ten days more shall be granted to amend, and, if sufficient signatures have then been obtained, he shall present the petition to the council. It is palpably manifest that a petition could not thus be prepared, signed by at least twenty per cent. of the electors and presented to the council in ten days from the passage of an ordinance, as required by article twenty of the statute. Aside from other requisites of such a petition, which requires at least thirty days for its completion, the clerk, as will be observed, has ten days to prepare the petition and to give notice by advertisement where and when it may be signed, and thereafter the electors have ten days for attaching their signatures. The time for instituting the referendum proceedings by filing a petition and thereby continuing the suspension of the

operation of the ordinance will expire and the ordinance become operative before the petition can be signed and presented to the council.

The settled rules of statutory construction, as already pointed out, will not permit such a result if it can reasonably be avoided. We will not presume that the legislature by the language of the enactment intended, in bad faith, to nullify the referendum article, and thereby defeat its express purpose. There is no ambiguity or uncertainty of purpose in the referendum article. It plainly declares that no ordinance shall go into effect before ten days after its final passage, and if the requisite protest is presented to the council within that time, the operation of the ordinance is suspended, and, if not entirely repealed, it must be submitted to a vote of the electors of the city. The two dominant thoughts in these provisions of the article are the suspension of the operation of the ordinance and its submission to the popular vote. The first is to be carried out by presenting a protest to the council. This may end all further proceedings on the ordinance. The council is required to reconsider the ordinance, and, if it is entirely repealed, the legislation is ended. If, however, such action be not taken by the council, the second step becomes necessary, and the electorate must determine by their votes whether the ordinance shall become a law of the city. The submission is to be made "as is provided by subsection (b) of section one of article nineteen of this act," which provides, inter alia: "Forthwith, after the clerk shall attach to the petition accompanying such ordinance his certificate of sufficiency, the council shall call a special election unless the general municipal election is fixed within ninety days thereafter." It was evidently intended that this submission should be made on petition, prepared and signed in accordance with the provisions of article nineteen. The petition of protest was regarded as a preliminary proceeding and as having served its purpose by bringing the objections of the electorate to the notice of

the council.   No elaborate procedure, such as is provided by article nineteen, was deemed by the legislature necessary in simply entering the protest which, if effective, made unnecessary an election and the consequent care and expense required by the machinery of that article in ascertaining the duly qualified electors of the city.   The objection that unless the protest is prepared and signed as required by the initiative article it cannot be known if the requisite number of signatures has been obtained is not well taken.   If that becomes a question of importance in any case, it must be determined by the courts in the usual way.   The burden is upon those entering the protest against the ordinance to show that they have complied with the requirements of the statute as to the number of signers as well as in other respects, and, failing to do so, the protest falls and the ordinance becomes operative and is a law of the city.

Our construction of the referendum article makes it intelligible and enforceable, and, hence, carries out the intention of the legislature in the enactment of the statute.

The judgment refusing the mandamus is reversed, and the writ is ordered to be awarded as prayed for.