PAUL BEARDSLEY, executor, &c.,

*v.*

LUCY HOWARD WRIGHT et al.

[Decided April 2d, 1918.]

Where testator has given a legacy to a brother who predeceased him, leaving a widow and two children, his sole descendants, who survived the testator, the widow takes no share in the legacy, and no part of the legacy can go to the residuary legatee.

On bill, &c.   Heard on bill and answer.

*Mr. Gilbert Collins,* for the residuary estate.

*Mr. Edward A. Markley,* for the children of legatee.

*Mr. Frank W. Hastings,* for the widow of legatee.

LEWIS, V. C.

Testator gives a legacy of $50,000 to a brother who predeceases the testator, leaving a widow and two children his sole descendants, all three of which last-mentioned persons survive the testator.   There is a residuary clause in the usual form in favor of testator's children.

*Query.* Does the widow take any share of the legacy, or does a share pass under the residuary clause, or do the children of the brother, the legatee, take the whole amount ($50,000) ?

1. The solution of the problem involves a construction of section 22 of our act concerning wills.   *4 Comp. Stat. p. 5866.* This statute deals with and provides for the following situation:

(1) There is a devisee or legatee who is either a descendant of the testator or a brother or sister of the testator, or a descendant of such brother or sister of the testator.

(2) The statute only applies where we have a devisee or legatee who comes within one or the other of the three classes enumerated above.

(3) Devisee or legatee must predecease the testator.

(4) The devisee or legatee must leave "a child or children, or one or more descendants of a child or children who shall survive" the testator.

It is worth while to note that the original statute saving devises, &c., from lapse was passed in 1824.   *Elm. Dig. 601 § 32; Rev. Stat. 1847 p. 369 § 22.*   This act did not extend to brothers or sisters or descendants of brothers or sisters of the testator. Devises or legacies to these collaterals still lapsed if the devisee or legatee predeceased the testator.   Our present statute which extends protection against lapsing to the cases where the devisee or legatee is the brother or sister, or descendant of a brother or

sister of the testator, was enacted in 1887. *P. L. 1887 p. 63 ch. 47.*

2. The widow takes no interest whatever. The reasons which compel a construction of the statute so as to exclude the widow are, in my judgment, plain and cogent.

(1) In the first place, the widow is not named. The takers under this statute, *i. e.,* the descendants of the legatee, who predeceased the testator, take their shares solely by force of the statute.

(2) This statute, like the one providing for afterborn children, is based upon a presumed intention of the testator. If a man leaves each of his two sons $50,000, and one son dies leaving children before the testator can make a new will, the statute comes in and recognizes a presumption that the testator, if his attention had been called to the matter and he had had the opportunity, would not have allowed his grandchildren to be unprovided for. There is no such presumed intention in the case of a son's widow or a brother's widow. These widows are not of the blood of the testator. They may remarry and have other children.

(3) It seems to me to be a fatal objection to the widow's claim that if the legatee leaves no descendant, but leaves a widow, the statute does not apply and a lapse occurs and the widow gets nothing. To give the widow a share in case the legatee left a child or children, while she takes nothing in case there was no child of the legatee, seems to me to make the statute almost absurd. Whether the widow takes a share or not depends upon an accident. Why should the statute establish a presumption that a testator desired a legacy to his brother to go in part to his brother's widow, if the brother had a child or children, but entertained no such desire in case there was no child.

(4) To emphasize the last point let us consider that the descendants of the brother whose existence prevents the lapse, may not be children of the widow but children of the legatee's former wife.

(5) It must be borne in mind that this statute preventing lapse in certain cases applies equally to a devise and a legacy. Let us suppose the testator devises valuable improved lands

which have large rentals to the brother who predeceased him leaving a widow and children by that widow or by a former wife. Is it possible that by implication an estate of dower can be vested in this widow? Is not the mere statement of this question its complete answer?

(6) Last of all, the statute expressly says that the estate so devised or bequeathed shall vest in such child or children, &c. It is not a part of the estate but the whole of it which is to vest in the children. This point, however, can more satisfactorily be considered a little later.

(7) My conclusion is that to give a widow a share of the legacy or an estate of dower in the devised land by implication would be a violent wrenching of the words and the spirit of this statute.

Lord Halsbury has sharply criticised the tendency of some courts to read into a will provisions which the court thinks the testator would have inserted if his attention had been called to the matter. Statutes, like the one we are considering, illustrate a correct and altogether justifiable juridical process. The difference in respect of this matter between the court's action in inserting provisions in a will, and the action of the legislature in making a law governing the devolution of property, is too plain to call for discussion.

3. No part of the legacy can go to the residuary legatee. Nor, we may add, in the absence of a residuary clause could any part of it go as in case of intestacy. The following are the reasons which support this view:

(1) Such a construction makes a lapse and nullifies the express words of the statute. The statute, as quoted above, is absolute and positive that in the situation with which the statute deals, "such devise or legacy to such person," &c., *shall not lapse.* Lapsed devises and legacies, of course, go under the residuary clause. The only way the residuary legatee can get any interest in the legacy or devise of land is by a lapse.

(2) We again note that it is the whole estate so devised or bequeathed which the statute says shall vest in the descendants of the devisee or legatee who had the misfortune to predecease the testator.

(3) The consideration of the case of a devise of land, I think, will show that a violent stretching of the meaning of words, and what an extension of a law by implication are necessary to pass any interest under a residuary clause.

The widow, we have seen, gets no dower. The children, however, upon the theory which we are considering, only take the devised land subject to a life estate which is exactly equivalent to the widow's dower. This life estate created somehow—a sort of left over or undisposed of part of the land devised—is supposed to go under the residuary clause. This is a clear case of lapse. The residuary devisee cannot possibly get this life estate in the land on any theory but that of lapse. This life estate was a part of the devise to the brother.

4. In my opinion, the whole of the legacy, or of the devise, as the case may be, is saved from lapse by the express terms of the statute and is vested in the descendants of the devisee or legatee.

The only argument that I have been able to think of against this construction which leaves the widow out, whether she is the mother of the children of the deceased devisee or legatee, or a second wife of the legatee and a stranger in blood to all parties concerned, and also denies that any share of the devise or legacy can go under a residuary clause, is based upon the words of the statute which provide that the "estate so devised or bequeathed shall vest" in the descendants, &c., *"in the same manner* as if such legatee or devisee had survived the testator or testatrix and had died intestate."

This language, it seems to me, simply provides the manner in which a class shall take the whole estate. The important function of these words, I think, was to provide that the devise or legacy should be distributed *per capita* or *per stirpes,* according to circumstances under a definite specified rule. The respective shares or proportions *inter sese* in the devise or legacy which the descendants of the devisee or legatee would take in case such devisee or legatee died intestate owning the property, are made the measure with which to accomplish the distribution of the whole estate.

If the devisee or legatee dies intestate, it does not follow that

his widow has dower or takes a distributive share of his personal estate. There may be a jointure—a marriage settlement. In such case we may ask at this point, Would it not be amazing to give a life estate in one-third of the land to a residuary devisee, or one-third of the legacy of $5,000 to a residuary legatee in case there was no jointure or marriage settlement, and to give the residuary devisee or legatee nothing in case there was a jointure or marriage settlement excluding the widow from all participation in her deceased husband's estate?

The statute does not say that "the estate so devised or bequeathed" shall vest in the descendants *to the same extent* or in such shares, &c. The plain mandate of the statute is that the whole estate which the brother would have taken if he had survived the testator shall vest in the descendants of the brother, but as between and among themselves the estate is to vest "in the same manner," *i. e., per capita* or *per stirpes,* as they would take *inter sese* if their ancestor had died the owner of the property in question.

Restating the argument in a somewhat different form, it may stand as follows:

Descendants of a deceased brother may consist of children and grandchildren, the grandchildren being children of a deceased child or deceased children of the brother. These descendants of different generations take in very different shares *inter sese.* Each of two children may take a quarter of the $50,000. A set of four grandchildren may each take a sixteenth, and a set of two grandchildren may each take an eighth. The statute in providing that there should be no lapse, but that the whole estate devised or bequeathed should vest in the descendants of the devisee or legatee, properly and naturally provides a test by which in all sorts of cases it may be determined precisely what the relative interests of the different descendants are—in what "manner" the whole devise or the whole legacy is to be divided among them.

An ancient and familiar rule of construction makes it necessary that force be given, if possible, to every portion of this statute. In this case we have an unqualified declaration, to the effect that when a certain situation exists, a devise or legacy to a

dead person "shall not lapse, but the estate so devised or bequeathed," *i. e.,* the whole estate, the entire subject-matter of the devise or bequest, shall vest in the descendant or descendants of the deceased intended devisee or legatee. But the counsel for the residuary devisee or legatee says that when the situation described exists, and there is a widow of the deceased devisee or legatee, there shall be a lapse for the benefit of the residuary devisee or legatee. This nullification of the statute in the particular case which must often occur, is reached by attributing a very wide and potent meaning to the words "in the same manner," &c. But under the principle above referred to, if we can give a reasonable meaning and effect to this phraseology, "in the same manner," &c., without radically modifying the positive declaration of the statute that there shall be no lapse, &c., surely we ought to do so. I am firmly of opinion that such reasonable meaning and effect are attributed to the words in question when they are restricted to the definition of the reciprocal rights of the descendants *inter sese.* I may go further. If the statute had not intended by these words "in the same manner," &c., merely to define *how* the class should take *inter sese* the estate which their ancestor would have taken if he had survived the testator, the draftsman of the statute and the legislature could by the use of two or three words have made the matter perfectly plain. It is unreasonable to suppose that this unqualified language preventing a lapse would have been employed if it was in the legislative mind that there would be in many cases a very important implied modification permitting a lapse.

In dealing with the claim on behalf of the residuary devisee or legatee, I do not think that I have made quite enough of one situation to which this statute applies. It will be observed that the lapse is saved on behalf of all the descendants who may take, as we have seen, *per capita,* but often will take *per stirpes.* The widow of the deceased intended devisee or legatee is ignored and takes nothing, and I do not care to further argue the case against her. The point that I am trying to elucidate is this, that this statement preventing lapses necessarily applies in large number of instances to the wills of testators who die in old age, leaving married children and different sets of grandchildren, and

brothers and sisters and nephews and great nephews. In case the deceased devisee or legatee, if we may use that phrase for convenience, has a descendant, or number of descendants, in many cases he, she or they will have a step-mother or step-grandmother whom the testator may never have known. Now, is it not a most extraordinary construction of this statute to make a devolution of a large amount of property under a residuary clause to depend on a pure accident?

In the case in hand, let us suppose, whatever the fact may be, that the widow of the brother who predeceased the testator was a second wife or a third wife by whom the brother had no child. The mere fact, however, that the brother in his later years remarried, and that the wife survived him and survived the testator, does not give her anything, but gives $16,666.66 to the residuary legatee. This residuary legatee would not take any part of this money if the intended legatee had not married the last time, or if the wife had not survived the testator, or if there was a jointure or marriage settlement which expressly operated to prevent her from taking any part of the personal estate of her husband in case he died intestate.

In the case supposed we have a widow who is not of the same blood as the testator or the descendants of the intended legatee. The survivorship of this widow gives her absolutely nothing. She does not take such portion of the legacy or the devised land as she would have taken if her deceased husband had been the owner of the property when he died intestate. And yet the mere fact of the existence of this woman who is utterly unrelated to any possible transactions or situations contemplated by this statute, has the effect to cut down the shares which the descendants of the legatee, her step-children or step-grandchildren, otherwise would take. In the case under consideration, the second or third wife by surviving the testator does not get the $16,666.66, or any part thereof, but in some mysterious way by her survivorship effects the taking of that much money from her step-children and the transfer of this substantial sum to the residuary legatee.

My view is that no part of the legacy shall lapse, but it shall wholly vest in the children.