### UNITED STATES v. NATIONAL SURETY CO.*

### In re BALD EAGLE MINING CO.

#### (Circuit Court of Appeals, Eighth Circuit. December 10, 1919.)

#### No. 201.

BANKRUPTCY ☞349—CLAIMS OF UNITED STATES AND SUBROGATED SURETY ENTITLED TO EQUAL PRIORITY.

Under Rev. St. § 3466 (Comp. St. § 6372), which gives the United States priority over other creditors of the estate of an insolvent or bankrupt debtor, and section 3468 (section 6374), providing that, "whenever the principal in any bond given to the United States is insolvent, * * * and * * * any surety on the bond * * * pays to the United States the money due upon such bond, such surety * * * shall have the like priority," where the United States has a claim against the estate of a bankrupt, and the surety on the bankrupt's bond securing such claim has paid the same to the extent of the obligation of its bond, the United States as to the remainder of its claim and the surety as to the amount paid are entitled to equal priority.

Hook, Circuit Judge, dissenting.

Petition to Revise Order of the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Granting certiorari 251 U. S. —, 40 Sup. Ct. 396, 64 L. Ed. —.

In the matter of the Bald Eagle Mining Company, bankrupt. On petition by the United States as a creditor to revise an order allowing equal priority to the claim of the National Surety Company. Affirmed.

W. L. Hensley, U. S. Atty., and Benjamin L. White, Asst. U. S. Atty., both of St. Louis, Mo.

Frank E. Williams, of St. Louis, Mo. (S. W. Fordyce, Jr., John H. Holliday, Thomas W. White, and Lucius W. Robb, all of St. Louis, Mo., on the brief), for respondent.

Before HOOK and CARLAND, Circuit Judges, and YOUMANS, District Judge.

CARLAND, Circuit Judge. The petitioner by this proceeding seeks to have revised in matter of law an order of the District Court made December 31, 1918, confirming certain orders of the referee with reference to the claims of respondent against the estate of the Bald Eagle Mining Company, a bankrupt. The undisputed facts are as follows:

On November 3, 1917, the respondent filed two claims against the estate of the bankrupt, for $3,000 and $150, respectively, which were allowed on the same day. On the 12th day of December, 1917, the United States filed a claim against the estate of the bankrupt for $9,912.84, which was allowed on the same day, and it was further ordered and directed that said claim be accorded priority over all other claims, except those for wages and taxes. On March 12, 1918, the respondent filed a motion with the referee for leave to amend its two claims above mentioned, by claiming priority for the same equal to that of the United States. The motion was granted on March 25, 1918. The United States filed a petition for review. The proceedings were duly certified, and after a hearing the District Court affirmed the order of the referee. It is this last-named order which the United States seeks to have revised.

The claim of the United States against the bankrupt was for damages suffered by them by reason of the failure of the bankrupt to perform its contract with the government for supplying coal at Jefferson Barracks, Mo., after deducting from said damages payments made by the respondent. The claim of the respondent for $3,000 was for money paid the United States by reason of its being surety on the bond of the bankrupt given to secure the faithful performance of the coal contract above mentioned. The claim of respondent for $150 was for money paid the United States by respondent by reason of its being surety upon the bond of the bankrupt to secure the faithful performance of a contract to furnish bituminous lump coal to the United States arsenal at St. Louis, Mo. In each instance the amount paid was the full amount of the bond. The question for decision is as follows: Has the United States and the respondent an equal priority to the extent of the amount of their respective claims, or has the United States exclusive priority as against all other claims until the full amount of its claim is paid? The applicable statutes are as follows:

Section 3466, R. S. (Comp. St. § 6372):

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

Section 3468, R. S. (Comp. St. § 6374):

"Whenever the principal in any bond given to the United States is insolvent, or whenever, such principal being deceased, his estate and effects which come to the hands of his executor, administrator, or assignee, are insufficient for the payment of his debts, and, in either of such cases, any surety on the bond, or the executor, administrator, or assignee of such surety pays to the United States the money due upon such bond, such surety, his executor, administrator, or assignee, shall have the like priority for the recovery and receipt of the moneys out of the estate and effects of such insolvent or deceased principal as is secured to the United States; and may bring and maintain a suit upon the bond, in law or equity, in his own name, for the recovery of all moneys paid thereon."

There is no question as to the meaning of section 3466. In the cases specified in said section, the United States has beyond question undoubted priority. When we come to section 3468, it is claimed by counsel for the United States that it must be so construed as to be of no force or effect, except in cases where the United States has no claim whatever to be satisfied, and it appearing in the present case that the United States has a claim against the estate of the bankrupt, said section is inoperative. The ground of this contention is that the priority granted by section 3466 still attaches to the claim of the United States, even as against the claims of respondent, and that no priority exists in favor of respondent until the claim of the United States is fully paid. If this contention is sound, we must read into section 3468, a proviso at the end of the last clause but one of the section, reading as follows:

"Provided that said United States has no claim against the insolvent estate."

We do not think we have any authority to interpolate such a proviso. We are of the opinion that, while the general priority of the United States is undoubted, it is within the power of Congress to qualify or limit this priority, and that by the enactment of section 3468 it has been provided that in the cases mentioned in said section the priority of the United States has been transferred to a surety who has paid the penalty of a bond in full, notwithstanding the latter still has a claim against the insolvent. It is claimed by counsel for the United States that the surety in a case like the one at bar has no priority, unless he pays all of the debt or debts due from the bankrupt to the United States. The section which we are endeavoring to construe does not provide that the surety shall pay all the debt or debts due from the bankrupt estate to the United States, but only the money due upon such bond, and it is conceded that the respondent did this. It paid

all the debt for which it was obligated as surety. If it should pay any more, it would be a mere volunteer, and not entitled to the right of subrogation as to the excess. It is not material, if the contention of counsel for the United States is right, whether the claim of the United States arises out of the same transaction as that of respondent or not.

It is contended and it is no doubt the law that the priority of the sovereign exists in full force and vigor, unless qualified by express words. But we have express words in section 3468. We think that sections 3466 and 3468 should be construed together, so as to give both force and effect; the United States retaining its priority as to the balance of its claims against the bankrupt estate, and the respondent standing on a level with them as to its claim. No case has been cited, nor have we found one, deciding the question involved. The cases cited simply establish the proposition that, where the title of the United States and the citizen concur, the title of the United States, except so far as the Legislature has thought fit to interfere, shall be preferred, and that where the principal in any bond given to the United States is insolvent, and any surety on the bond pays to the United States the money due upon such bond, such surety shall have the like priority for the recovery and receipt of the moneys out of the estate and effects of such insolvent as is secured to the United States. These rights are all given by the sections quoted and citation of other authority is unnecessary. Respondent's rights must be determined by section 3468. What its rights would be under the equitable doctrine of subrogation is not involved. The unreasonableness of the contention of counsel of the United States is made to appear when we consider a case where different bonds have been given by an insolvent to the United States with different sureties: One surety pays the full penalty of the bond on which he is liable, but he can have no priority until he has paid all the other bonds on which he is not liable.

We do not think the application to amend the claims of respondent by claiming priority constituted the filing of new claims after the year allowed by law.

Appeal No. 5362 is dismissed.

Judgment affirmed.

HOOK, Circuit Judge (dissenting). Section 3466 of the Revised statutes, which provides that "whenever any person indebted to the United States is insolvent * * * the debts due to the United States shall be first satisfied," is a statutory adoption for this country of a public policy which has prevailed in England from a very early day. The right is one of preference in the sovereign over the claims of all private persons, and is of universal application. No other statute should be construed to impair or lessen it, unless the intention to do so is clearly manifested.

With the above in mind, let us look at section 3468, R. S., which provides that—

"Whenever the principal in any bond given to the United States is insolvent, * * * and * * * any surety on the bond * * * pays to the United

States the money due upon such bond, such surety * * * shall have the like priority. * * * "

This is no more than a statutory declaration of the equitable doctrine of subrogation in favor of sureties. See United States v. Ryder, 110 U. S. 729, 4 Sup. Ct. 196, 28 L. Ed. 308. There is nothing in the language employed or in the decisions of the courts applying it to indicate that it should be given a more enlarged construction. In the case of private rights subrogation is not allowed to work loss or injury to a lien or preferred creditor whose claim has not been wholly discharged, although the surety may have paid in full his obligation for part of it. See National Bank of Commerce v. Rockefeller, 98 C. C. A. 8, 174 Fed. 22, by this court. Much less should it be allowed to impair or lessen the sovereign preferential right of the government. In Reg. v. O'Callaghan, 1 Ir. Eq. 439, it was held that the surety of a person indebted to the government who pays the indebtedness does not succeed to the government's right of priority, if there be a further amount owing it, though on a different account.

My Brothers say that such a construction of section 3468 is contrary to its express language and would deprive it of efficacy. It might be said that a contrary construction lessens materially the unqualified language of section 3466. I think, however, both sections may be construed to give each full effect according to its terms. That should always be done, if possible. The government's priority by section 3466 is over all private claims. The right given by section 3468 to the surety who pays his obligation in full is a "like priority"; that is to say, a priority over all private claims. But there is nothing in this to imply, and it does not follow, that the surety is thereby raised to an equal or pro rata status with the government as regards an unpaid demand it holds against the common debtor or his estate, whether on the same or another account. Statutes declaratory of old principles of public policy or of the common law should receive the old constructions, and in that way apparent inconsistencies may be avoided.

In think the order of the trial court should be reversed.