UNITED STATES ex rel. HARRIS v. DANIELS, Secretary of the Navy, et al.

(Circuit Court of Appeals, Second Circuit. January 6, 1922.)

No. 47.

1. **Army and navy** ⊜47—**Decision of courts-martial reviewable only for want of jurisdiction or exceeding powers.**

Federal courts-martial are given authority to determine finally any case over which they have jurisdiction, and their proceedings are open to review by the civil courts only for the purpose of ascertaining whether the court had jurisdiction, and, if it had, whether it exceeded its powers.

2. **Army and navy** ⊜47—**Jurisdiction of court-martial must affirmatively appear.**

A federal court-martial is a court of special and limited jurisdiction, and that its sentences may be recognized it must appear affirmatively and unequivocally that it was constituted according to law, that it had jurisdiction, that it complied with all the statutory regulations governing it, and that its sentence conformed to the law.

3. **Habeas corpus** ⊜16, 111(1)—**Judgment of court-martial may be reviewed on habeas corpus, and defendant discharged, if sentence is void.**

The judgment of a court-martial may be attacked collaterally on habeas corpus, and if a sentence under which petitioner is held is absolutely void he is entitled to a discharge.

4. **Statutes** ⊜206, 207—**Duty of courts to reconcile different provisions, but last in order prevails, if contemporaneous provisions are in irreconcilable conflict.**

Effect is to be given, if possible, to every word, clause, and sentence of a statute, and it is the duty of the court, so far as practicable to reconcile the different provisions, so as to make them consistent and harmonious; but where provisions are in irreconcilable conflict, if both were enacted at the same time, the last in order or arrangement controls.

5. **Army and navy** ⊜48—**Statute relating to naval courts-martial construed.**

The provisions of Act Feb. 16, 1909, § 9 (Comp. St. § 3025), that "the Secretary of the Navy may set aside the proceedings or remit or mitigate * * * the sentence imposed by any naval court-martial," and of section 17 (Comp. St. § 3022), that "all sentences of summary courts-martial may be carried into effect upon the approval of the senior officer present," are not in conflict, but both are enforceable by so construing them as to permit the sentence of a summary court-martial to be carried into effect on approval of the senior officer pending action thereon by the Secretary.

6. **Army and navy** ⟨⟩48—**Setting aside of sentence of court-martial under which navy man was discharged held to restore him to service.**

Where, in execution of the sentence of a summary court-martial, an enlisted man in the navy was given a bad-conduct discharge, a subsequent setting aside of the judgment by the Secretary of the Navy, on the ground that the specification on which he was tried did not state an offense, was a determination that the proceeding was without jurisdiction, and rendered the discharge a nullity ab initio.

Appeal from the District Court of the United States for the Eastern District of New York.

Habeas Corpus by the United States, on the relation of William Robert Harris, against Josephus Daniels, Secretary of the Navy, and others. From an order granting the writ, defendants appeal. Reversed.

For opinion below, see Ex parte Harris, 268 Fed. 911.

Wallace E. J. Collins, U. S. Atty., of Jamaica, N. Y. (Henry J. Walsh, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for appellants.

Emery C. Weller, of New York City, for respondent.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

ROGERS, Circuit Judge. This appeal brings here for review the proceedings of a naval summary court-martial which sentenced the relator, after what purports to have been a trial, to a discharge from the Navy. It is claimed that this sentence was subsequently disapproved and set aside by the Secretary of the Navy, and that this resulted in restoring the relator's status to that of an enlisted man, entitling the navy officials to place him in confinement pending a trial by a second naval summary court-martial upon a charge of desertion. The appeal is from an order entered on November 18, 1920, sustaining a writ of habeas corpus and discharging the relator, Harris, from the custody of the United States Navy.

It appears that the relator enlisted in the Navy of the United States on February 21, 1919, for a period of four years. On March 18, 1920, he was tried on charges by a summary court-martial on board the United States ship Bernadou. He was convicted and sentenced to a bad-conduct discharge. The proceedings, findings, and sentence of the court-martial were approved by the convening authority and the immediate superior in command on March 19, 1920, and on March 25th he was discharged from the Navy under the sentence above stated.

On June 1, 1920, he received a letter from the Navy Department, Bureau of Navigation, declaring that the sentence of the court-martial had been disapproved by the Secretary of the Navy, and directing and ordering him to report to the recruiting officer at Scranton, Pa. Pursuant to that order, but under protest, he reported to the recruiting officer at Scranton, turned over his discharge, and resumed his duties in the Navy. He thereafter reported every day on board the United States ship Iowa, upon which vessel he remained until July 26, 1920, when he returned to his home and remained away from the Navy.

About 61 days later, acting on the advice of his father, he surrendered himself to the authorities of the Navy for the purpose of having his status adjudicated. He was immediately placed in custody, and the Secretary of the Navy ordered that he be placed on trial by a Navy general court-martial on a charge of absence from station and duty after leave had expired. This charge and a specification thereunder in due form was signed and issued by the Secretary of the Navy, and a copy thereof was served on him, and he was placed under arrest for trial. While awaiting his trial by the second court-martial, he obtained his discharge from the custody of the naval authorities by means of the writ of habeas corpus, which is the subject of this appeal. On his return to the Navy under protest on June 1, the relator did not re-enlist, nor extend his enlistment, and no papers were signed by him at that time.

[1] Federal courts-martial are tribunals created by acts of Congress, with authority to determine finally any case over which they have jurisdiction, and their proceedings are open to review by the civil courts only for the purpose of ascertaining whether the court-martial had jurisdiction, and if it had, whether it exceeded its powers. Grafton v. United States, 206 U. S. 333, 347, 27 Sup. Ct. 749, 51 L. Ed. 1084, 11 Ann. Cas. 640; Carter v. Roberts, 177 U. S. 496, 498, 20 Sup. Ct. 713, 44 L. Ed. 861; Swain v. United States, 165 U. S. 553, 17 Sup. Ct. 448, 41 L. Ed. 823; Smith v. Whitney, 116 U. S. 167, 6 Sup. Ct. 570, 29 L. Ed. 601; Dynes v. Hoover, 20 How. 65, 15 L. Ed. 838.

[2, 3] A court-martial organized under the laws of the United States is a court of special and limited jurisdiction. It is called into existence for a special purpose and for the performance of a particular duty. That its sentences may be recognized it must appear affirmatively and unequivocally that the court which rendered them was constituted according to law, that it had jurisdiction, that it complied with all the statutory regulations governing it, and that its sentence conformed to the law. Runkle v. United States, 122 U. S. 543, 555, 7 Sup. Ct. 1141, 30 L. Ed. 1167. Its authority is derived from the statute, and it must proceed in conformity therewith. Being an inferior court of limited jurisdiction its judgments may be attacked collaterally, and the validity of its proceedings can be raised upon a hearing on habeas corpus. McClaughry v. Deming, 186 U. S. 49, 69, 22 Sup. Ct. 786, 46 L. Ed. 1049. If one is held under a sentence absolutely void, he is entitled, upon a writ of habeas corpus, to a discharge therefrom. Ex parte Reed, 100 U. S. 13, 23, 25 L. Ed. 538.

The right to order summary courts-martial is given by the Articles for the Government of the Navy in article 26, which provides as follows:

'Summary courts-martial may be ordered upon petty officers and persons of inferior ratings, by the commander of any vessel, or by the commandant of any navy yard, naval station, or marine barracks to which they belong, for the trial of offenses which such officer may deem deserving of greater punishment than such commander or commandant is authorized to inflict, but not sufficient to require trial by a general court-martial." U. S. Comp. Statutes Ann. 1916, vol. 4, c. 10, § 2994, p. 4266.

And the right of summary courts-martial to pronounce sentence is conferred by article 30, which reads as follows:

"Summary courts-martial may sentence petty officers and persons of inferior ratings to any one of the following punishments, namely:

"First. Discharge from the service with bad-conduct discharge. * * *"
U. S. Comp. Statutes Ann. 1916, vol. 4, c. 10, § 2998, p. 4267.

The relator having enlisted in the Navy as a fireman, third class, concededly came within the class of persons triable by a summary court-martial. And if the court was justified in pronouncing any sentence it is conceded that it was justified in pronouncing the sentence it imposed. Whether under the circumstances of the case the sentence was valid is the question to be determined.

The Articles for the Government of the Navy, in article 34, require the proceedings of summary courts-martial to be transmitted to the Navy Department, where they are to be kept on file for a period of two years, after which time they may be destroyed in the discretion of the Secretary of the Navy. U. S. Comp. Statutes Ann. 1916, vol. 4, c. 10, § 3002, p. 4268; U. S. St. at L. vol. 35, part I, c. 131, § 14, p. 622.

On April 15, 1920, the record of the proceedings of this particular summary court-martial was received by the Navy Department; and on April 22d the Secretary of the Navy sent a communication to the commanding officer of the United States ship Bernadou in relation to the summary court-martial of the relator, from which the following excerpt is taken:

"2. It is the opinion of the department that the specification is insufficient and fails to state an offense, as set out in Court-Martial Order 237, 1919, page 15. The specimen specification on page 120, Naval Courts and Boards, which was followed in this case, has been corrected by changes No. 3, Naval Courts and Boards.

"3. In view of the foregoing, the proceedings, finding and sentence in the case of the above-named man are hereby disapproved, and you will cause his record to be corrected accordingly.      [Signed]    Josephus Daniels."

It is claimed that this disapproval of the proceedings of the court-martial rendered them void ab initio. The argument is that no sentence could become final until the Secretary of the Navy had reviewed the proceedings and approved them; that as the Secretary disapproved, and found that the specification on which the relator was tried failed to state an offense against him, the court-martial was without jurisdiction and the sentence was of no effect.

If the proceedings of the court-martial have been declared by competent authority void, and its sentence has been set aside as a nullity, on the ground that the relator had been tried on a specification which failed to state an offense against him, it needs no argument to establish the fact that his status as an enlisted man was not changed in contemplation of law in any particular by reason of the sentence which was imposed. A void sentence can no more affect the status of the person upon whom it is pronounced than a void judgment can affect the property against which it is rendered. In re Bird, 3 Fed. Cas. 425, No. 1,428. This makes it necessary for us to consider the effect of the action taken by Secretary Daniels in disapproving the proceedings of the court-martial.

The act of March 2, 1855, § 8, provided:

"That no sentence of a summary court-martial shall be carried into effect without the approval of the officer ordering the court, who shall have power to remit, in part or altogether, but not to commute any such sentence." U. S. St. at L. vol. 10, c. 136, p. 627.

The act of March 2, 1867, § 5, so amended the act of 1855 that the authority therein given to the commander of any vessel in the Navy to convene summary courts-martial— :

"shall require the approval of the proceedings by the commander-in-chief, when present in port, and, in his absence, that of the senior officer present, in all cases before carrying the sentence into execution; and in all cases where the sentence involves loss of pay, that part of such sentence shall be subject to the approval or disapproval of the Secretary of the Navy." U. S. Stat. L. vol. 14, c. 174, p. 516.

The act of February 16, 1909, which is entitled "An act to promote the administration of justice in the Navy," provided in section 9:

"That the Secretary of the Navy may set aside the proceedings or remit or mitigate. in whole or in part, the sentence imposed by any naval court-martial convened by his order or by that of any officer of the Navy or Marine Corps." U. S. St. at L. vol. 35, part I, c. 131, p. 621 (Comp. St. § 3025).

But a later provision of the same act (section 17) provided:

"That all sentences of summary courts-martial may be carried into effect upon the approval of the senior officer present, and all sentences of deck courts may be carried into effect upon approval of the convening authority or his successor in office." Comp. St. § 3022.

It thus appears that the act of 1855 did not provide for the review by the Secretary of the Navy of the proceedings of a naval summary court-martial, but that the act of 1867 gave to the Secretary of the Navy the power to approve or disapprove that part of any sentence which involved a loss of pay, and that the act of 1909 contained a provision which purports to enlarge still further the power of the Secretary, by authorizing him to set aside the proceedings or remit or mitigate in whole or in part the sentence imposed by any naval court-martial. Under the act of 1867 his power of review was very limited, being confined to sentences which involved loss of pay, while under the act of 1909 his power is extended to all sentences. Inasmuch as a number of the sentences which such courts are authorized to impose do not involve a loss of pay, the authority given under the act of 1909, if valid, is very much increased, and would include such sentences as the following:

Solitary confinement in irons, on bread and water.
Solitary confinement in irons.
Confinement.
Deprivation of shore liberty.
Reduction in rating.

There is an apparent conflict between section 9 and section 17. Section 17 expressly declares that "all sentences" of summary courts-martial may be carried into effect upon the approval of the senior officer present; while section 9 provides that the Secretary of the Navy

may set the proceedings of the court aside and "remit or mitigate in whole or in part the sentence imposed."

[4] We do not think that this apparent conflict is one in reality. It is a cardinal rule of construction that effect is to be given, if possible, to every word, clause, and sentence of the statute. Sintering Co. v. Reclamation Co. (C. C. A.) 263 Fed. 315; United States v. Brewery Co. (D. C.) 260 Fed. 486; United States v. Auto (D. C.) 255 Fed. 793; United States v. Finley (D. C.) 245 Fed. 871; United States v. Ninety-Nine Diamonds, 139 Fed. 961, 72 C. C. A. 9, 2 L. R. A. (N. S.) 185; McKay v. Hill, Fed. Cas. No. 8,845; In re Kilby Bank, 23 Pick. (Mass.) 93; Ruda v. Industrial Board, 283 Ill. 550, 119 N. E. 579; Gas, etc., Co. v. Springfield, 292 Ill. 236, 126 N. E. 739; Commonwealth v. Wilkes Barre, 258 Pa. 130, 101 Atl. 929; Harrington v. State, 200 Ala. 480, 76 South. 422; Lovalo v. Stamping Co., 202 Mich. 85, 167 N. W. 904; Beardsley v. Wright, 89 N. J. Eq. 58, 103 Atl. 809. It is the duty of the court so far as practicable to reconcile the different provisions, so as to make them consistent and harmonious, and to give a sensible and intelligent effect to each. Camunas v. New York, etc., S. C. Co., 260 Fed. 40, 171 C. C. A. 76; Wainwright v. Railroad Co. (D. C.) 253 Fed. 459; United States v. National Surety Co. (C. C. A.) 262 Fed. 62, 66; Shoe Company v. Phœnix Assurance Co., 203 Ala. 551, 84 South. 763; Colton v. Board of Trustees, 287 Ill. 56, 122 N. E. 73; Price v. County, 221 N. Y. 260, 116 N. E. 988. In the consideration of irreconcilable conflicting provisions, if both were enacted at the same time, the last in order or arrangement controls. Hall v. Equator M. & S. Co., Fed. Cas. No. 5,931; In re Richards, 96 Fed. 935, 939, 37 C. C. A. 634; In re Tune (D. C.) 115 Fed. 906, 911; United States v. Jackson, 143 Fed. 783, 75 C. C. A. 41; Howard v. Bangor & A. R. Co., 86 Me. 387, 29 Atl. 1101; State v. Public Service Commission, 101 Wash. 601, 172 Pac. 890. And one of Puffendorf's rules of construction is that:

"When we meet with a seeming repugnancy in the terms, conjectures are necessary to work out the genuine sense, by reconciling it, if possible, to those terms that seem to be repugnant. But if there be a clear, evident repugnancy, the latter vacates the former." Pot. Dwar. Stat. 132.

[5] In examining the act of 1909 in the light of the rules laid down we think it cannot be said that such an irreconcilable conflict exists between sections 9 and 17 as makes it necessary to hold that effect cannot be given to both sections. Section 9 confers authority on the Secretary of the Navy to set aside sentences imposed by any naval court-martial. If that section is valid, it does not seem to us that such sentences of a naval court-martial can be regarded as final until the Secretary of the Navy has acted.

The sentence of every summary court-martial, by virtue of section 9, is made conditional, being subject to the final action of the Secretary of the Navy. Under section 17 the sentence may be carried into effect upon the approval of the senior officer as therein provided; but, when so carried into effect, if it is thereafter set aside by the Secretary of the Navy, the status of the enlisted man, whose discharge was only conditional, is thereby restored, and continues as it was before the

sentence was imposed. The situation is analogous to that of a man convicted and sentenced to imprisonment for a term of years. The sentence may have been carried into effect, and the man actually imprisoned under it. If the appellate court decides the conviction was illegal, and sets the proceedings aside, because the trial court had no jurisdiction to try him on the indictment, his original status is restored.

Before concluding this opinion it is perhaps proper to call attention to the practice of the Department of the Navy in cases of this character prior to the enactment of the act of 1909 heretofore considered. The act of June 8, 1880 (Comp. St. § 612), which created the office of Judge Advocate General of the Navy provided that, "under the direction of the Secretary of the Navy," the Judge Advocate General shall "receive, revise, and have recorded the proceedings of all courts-martial," etc. And prior to the act of February 16, 1909, it appears to have been the practice of the Secretary of the Navy, without any express statutory authority, actually to set aside the proceedings of summary courts-martial, and to remit or mitigate any sentence imposed by such courts, if such action seemed to him to be warranted after a careful review of the record of the proceedings.

Whether this practice was warranted by anything in the act of June 8, 1880, is not before us, and need not be decided. It does not appear whether the practice antedated the act of 1880, and was thought to be derived by the Secretary by virtue of his general responsibilities and obligations imposed upon him as the head of the Navy Department, or was based upon the pardoning power exercised by him as representing the President in matters relating to the Navy, is not disclosed. In 1908 the Secretary of the Navy recognized the desirability of specific legislation on the subject, and he strongly advocated the enactment of legislation previously recommended. The result was the passage of the act of February 16, 1909.

Previous to that act sentences of summary courts-martial under section 1624 of the Revised Statutes (Comp. St. § 3000) could not be carried into execution, if loss of pay was involved, until the proceedings in each such instance had been approved by the Secretary. As many courts were held on ships at long distances from the United States, the delay of months in the execution of the sentence imposed proved very vexatious and subverted the whole object of a summary court—that of prompt and summary punishment for minor offenses. Hence the desirability of section 17 allowing the sentences to be carried into effect upon the approval of the senior officer present at the trial. After the enactment of section 17 of the act of 1909, the distinction between sentences of summary courts-martial which involved loss of pay and those which did not ceased to exist, so that both classes of sentences could be carried into execution without awaiting the approval of the Secretary of the Navy. All sentences of such courts-martial may be carried into effect upon the approval of the senior officer present. It was as though Congress should enact that, upon the conviction and sentence to imprisonment or fine in any District Court of the United States, the sentence might be carried into effect upon the approval of the District Judge who presided at the trial. Such legislation could not

operate to deprive the court of appeal of its right of review, and to set aside a sentence improperly imposed.

[6] And it is equally true that the enactment of section 17 did not work a repeal or nullification of section 9. Effect must be given to that provision, so far as it can be consistently applied. Section 9 makes the sentences of any naval court-martial in a sense conditional upon the approval of the Secretary of the Navy, who is given the power to set aside the proceedings and to remit or mitigate in whole or in part the sentence imposed. We are not now called upon to consider all possible questions and difficulties which might arise under this provision. It is enough to consider at this time the application of section 9 to the facts of the case which is now before us; and we find no difficulty in declaring that as the Secretary of the Navy found in this case that the naval summary court-martial, which tried the relator, was without jurisdiction, because the convicted man was not legally charged with the commission of an offense and set aside the proceedings, the sentence became a nullity. It must follow that the discharge of the relator from the service must be treated as an absolute nullity ab initio.

The order of the court below, in sustaining the writ of habeas corpus and in directing the discharge of the relator, and in adjudging that the United States naval authorities are without jurisdiction to try him by court-martial for any offense committed since March 25, 1920, is reversed.