ESSEX COUNTY ORPHANS COURT.

IN THE MATTER OF THE ESTATE OF SOPHIE C. FORCE, DECEASED.

Decided April 26, 1945.

Proctor for the estate of Sophie C. Force, *Fred W. Gaston* (*William A. Sumner,* of counsel).

Proctor for Edna Dewey Timson, *Richard R. Fisher.*

Proctors for the next of kin of Mary W. Potter, *Hobart, Minard & Cooper* (*Ralph E. Cooper*).

HARTSHORNE, J.   The question here is whether or not the children of Mary W. Potter, decedent's sister, take a specific legacy of $5,000 left in the will "to my sister Mary W. Potter," together with one-fifth of the residue of the estate, in view of a residuary bequest of "one share to my sister Mary W. Potter." This question is raised by the fact that Mary W. Potter had not only predeceased the decedent, Sophie C. Force, but had died before she executed her will.  More specifically, the issue is whether the statute (*R. S.* 3:2–18; *N. J. S. A.* 3:2–18) applies in favor of the named legatee's children, when their mother died before the will was made, since all

admit the act would apply if she had died subsequent to the making of the will, but before the testatrix' death.

The act is as follows:

"When a devise or bequest is made by will to a child or other descendant of the testator or to a brother or sister or any descendant of a brother or sister of the testator, and such devisee or legatee shall, during the life of the testator, die testate or intestate leaving any child or any descendant of a child of such devisee or legatee surviving the testator, such devise or legacy shall not lapse but shall vest in any such child or descendant of a child of such devisee or legatee as if such devisee or legatee had survived the testator and died intestate; but this section shall not apply where the testator shall by the will or codicil thereto, or other instrument, have otherwise directed in regard to the children or descendants of such devisee or legatee."

The present Revision is, in substance, the same as the previous act, enacted first in 1824 (*Elm. Dig.* 601) as amended in 1887, to cover brothers and sisters of the testator in addition (*Revision, p.* 1246, § 22).

While the above issue was dealt with in the case of *Murphy* v. *McKeon,* 53 *N. J. Eq.* 406; 32 *Atl. Rep.* 374, it is urged that the consideration of the matter there was but *dictum,* in view of the fact that the statute for other reasons was there held to be inapplicable. Both because of this and because of the fact that there is a definite divergence in the authorities throughout the country on this specific point, the issue must be considered further.

The prime purpose of the statute in question, and that of the similar enactments throughout this country and England, has been repeatedly stated to be the normal, and, therefore, presumed, intention of the testator to protect the close relatives of the deceased named legatee. *Murphy* v. *McKeon, supra; Beardsley* v. *Wright,* 89 *N. J. Eq.* 58; 103 *Atl. Rep.* 809; *Winter* v. *Winter,* 5 *Hare* 306. This purpose would clearly be defeated, were the statute to be construed as inapplicable. For the legacies to Mrs. Potter, instead of going to her children, would under such circumstances largely, if not entirely, go elsewhere.

Furthermore, our statute, particularly in its last clause,

clearly evinces the purpose of effectuating the actual intent of the testator in any particular will, such being, indeed, the cardinal purpose of the statute of wills, as a whole. Turning to the will in question, we find that the actual intent of testatrix, for which the statute in question has regard, was in fact to protect the close relatives of Mrs. Potter and that this actual intent would be defeated, were the statute held inapplicable. Such was the view of the Court of Chancery as to the similar provisions of the will involved in the case of *Dildine* v. *Dildine,* 32 *N. J. Eq.* 78. Though the court could not there effectuate such actual intent, since the statute, as it then existed, before its present amendment, did not cover the devisees' sisters named in the will. That this was our testatrix' actual intent is made more clear, when we consider how meaningless, would be the language of the will in this regard, if testatrix' intention had been otherwise.

Such other contention is that the specific legacy of $5,000 "to my sister Mary W. Potter" is nullified, the money going instead to the testatrix' five named residuary legatees, one of whom was Mary W. Potter. But, if such was her intent, this intent would have been most simply effectuated by omitting this specific legacy "to my sister Mary W. Potter" entirely, whereupon its amount would have fallen into her residuary estate, as above, of its own force. In short, the contention that the statute does not apply makes the words of testatrix as to the specific legacy to Mrs. Potter pure surplusage.

Turning to the residuary clause, this same contention requires the nullification of the one-fifth share "to my sister Mary W. Potter," increased as it is by $1,000 apportioned as above and requires its distribution either among the four other residuary legatees or among testatrix' next of kin as on intestacy. If the former, then again as in the case of the specific legacy, the testatrix' inclusion of the residuary clause in favor of Mrs. Potter becomes surplusage, since, if such clause had been omitted entirely, such share would go, of its own force, to the other four residuary legatees. On the other hand, if Mrs. Potter's residuary share goes, as contended, to testatrix' next of kin, it would certainly have been more clear, direct and natural for decedent to have said so in so many

words, than to have used words apparently to the express contrary, *i. e.*, that one-fifth should go "to my sister Mary W. Potter," and this regardless of the resultant "intestacy which the law abhors."

In short, the contention that the statute does not apply is based upon the assumption that the testatrix used words in her will which were either utterly meaningless or utterly contrary to what those words would mean to the ordinary man, and this not once, but twice. This clearly indicates that such a construction of the will is contrary to the intention of the testatrix in fact, for which the statute in question has regard, as well as contrary to its prime purpose—the protection of the close relatives of the named legatee.

The only reason advanced for this violation of this cardinal purpose of the statute is because of the technical common law distinction between void and lapsed legacies, a distinction which the statute does not express in words, and which many decisions, both in this and other jurisdictions, disregard. After all, it is the actual intent of the legislature which is the crux. And surely, it stretches the imagination to the breaking point to conclude that the legislature, composed in the main of laymen, had in mind when it enacted the statute this technical, esoteric, common law distinction, not stated in words, rather than what is admitted to be the prime purpose of the statute, *i. e.*, the protection of the close relatives of a legatee who died "during the life of the testator." Of course, since the law is made for man, not man for the law, it is generally desirable, in case of ambiguity in the meaning of words used by the man on the street, to resolve such doubt in accord with the intent of the man on the street rather than in accord with any fine-spun artificiality of the profession.

In addition, this protection of the named legatee's descendants is equally essential whether the legatee died during that portion of testator's life, which preceded his making the will, or during that portion of his life which succeeded his making the will. In fact, this contention as to such differentiation, based as it is on the time of making the will, disregards the basic ambulatory character of wills which makes the date of death the important factor. That being so, as long as the beneficiary's death occurred previous to the testator's death,

the legal result should be the same in order to effectuate the intention of the statute, regardless of whether the beneficiary's death occurred before or after the unimportant date when the will was made. See, similarly, *Varick* v. *Smith,* 69 *N. J. Eq.* 505-512; 61 *Atl. Rep.* 151.

Moreover, "testatrix is presumed to have framed her will with the statutory regulations in mind." *In re Wintermute,* 97 *N. J. Eq.* 289; 127 *Atl. Rep.* 218. And it has already been held that when a testator made this statutory intent his own, by the words of his will, the issue of one dying before the testator executed his will took thereunder. *Outcalt* v. *Outcalt,* 42 *N. J. Eq.* 500; 8 *Atl. Rep.* 532. Surely the same rule should apply whether testator's intent, identic in both instances, was actual, as in the will, or presumed, as in the statute.

Indeed, the Dildine case, *supra,* adds a further reason, from the historical standpoint, to show that the legislative intent of the statute in question was to protect the close relatives of the named legatee who pre-deceased testatrix, regardless of the particular time they died. For as noted, the court was compelled in the Dildine case to violate testator's actual intent, due to the statute's omission to cover testator's sisters, and it was but a few years after the Dildine decision that the legislature extended the act to cover this very point by the above amendment of 1887. It is certainly reasonable to assume that this amendment of the act to substantially its present form, so closely following the publication of the Dildine opinion, was for the purpose of remedying the situation in that case. Yet, in the Dildine case "the testator's sisters, Martha and Abigail, were dead when the will was made." (*Dildine* v. *Dildine* (at *p.* 80). In other words, the history of the situation shows that the legislature intended the present act to apply to the situation in the case at bar.

Turning to the authorities elsewhere, we find the greater weight supports the same conclusion. While California, Maryland, Oklahoma and South Carolina are to the contrary, Illinois, Iowa, Maine, Massachusetts, Missouri, Virginia and Rhode Island are in accord, Rhode Island in fact having changed from the contrary rule. Compare *Windsor* v. *Brown,* 48 *R. I.* 200; 136 *Atl. Rep.* 434, with *Almy* v. *Jones,* 17 *R. I.*

265; 21 *Atl. Rep.* 616; 4 *Page, Wills* (3d ed.) 203, § 1434; *Lewis* v. *Corbin,* 195 *Mass.* 520; 81 *N. E. Rep.* 248. Moreover, the courts of England, for which our courts justly have such regard, in construing a substantially similar statute, are in full accord with the reasoning, if not the holding, of our Court of Chancery in the case of *Murphy* v. *McKeon, supra.* (See not only the decisions there cited, but *Wisden* v. *Wisden,* 2 *Sm. G.* 396, and the more recent case of *Re Stansfield, L. R.* 15, *Chancery Div.* 84.) Again, "Although it is universally admitted that the statutes for the protection of lapses are subject to defeat by proof of a contrary intent, the intent must be clearly proved, and all doubts are to be resolved in favor of the operation of the statute." 92 *A. L. R.* 848, n., and cases cited. In view of the fact that the well-reasoned opinion in *Murphy* v. *McKeon,* delivered by a jurist of such eminence as the late Chancellor McGill, has stood unquestioned in this state for a full half century, its conclusion would seem to approach closely to the authority of a binding decision. In any event, its principle has been so long accepted by the profession as governing property rights throughout this state, that its reversal now would be most unsettling to our citizens. *Clapp, Wills,* 183, § 113.

The authorities which deal with devises to a class, as distinguished from those to a named beneficiary, would seem inapplicable, as there is a special reason for holding the statute not to apply thereto. *Trenton Trust Co.* v. *Sibbitts,* 62 *N. J. Eq.* 131; 49 *Atl. Rep.* 530; *Security Trust Co.* v. *Lovett,* 78 *N. J. Eq.* 445; 79 *Atl. Rep.* 616. Nor does the fact that testatrix made specific bequests to Mrs. Potter's children bring the situation within the statutory proviso where it "shall not apply." By such bequests testatrix has not "otherwise directed in regard to the children or descendants of such devisee or legatee" within the meaning of the statute. *Ryder* v. *Myers,* 113 *N. J. Eq.* 360–367; 167 *Atl. Rep.* 22.

Since on both reason and authority the statute applies to the situation here, where the beneficiary pre-deceased not only the testatrix but the making of the will, the distribution of both the specific and residuary legacies, made by testatrix "to my sister Mary W. Potter," will go to her descendants as if Mary W. Potter had died intestate.