UNITED STATES v. BONANZI et al.

No. 68.

Circuit Court of Appeals, Second Circuit.

Feb. 7, 1938.

Louis Halle, of New York City, for Wm. J. Bonanzi.

Louis J. Castellano, of Brooklyn, N. Y. (Arthur L. Burchell, of Brooklyn, N. Y., of counsel), for Dominick Butto and Tizio Buda.

Leo J. Hickey, U. S. Atty., of Brooklyn, N. Y., Vine H. Smith and Frank J. Parker, Asst. U. S. Attys., both of Brooklyn, N. Y., and T. Vincent Quinn, Asst. U. S. Atty., of Flushing, N. Y., of counsel).

Before MANTON, L. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The appellants, with four others who have not appealed, were convicted after a trial by jury in the District Court for the Eastern District of New York. They were charged in an indictment containing three counts with conspiring to violate sections 173 and 174 of U.S.C.A. title 21 by unlawfully, fraudulently, and knowingly importing opium into the United States and afterwards facilitating the transportation and concealment of it and with the substantive offenses of importation of the opium and the facilitation of its transportation and concealment. They were convicted and sentenced on all three counts. But a recent decision of the Supreme Court requires reversal of the judgment as to Bonanzi, and the conviction of the other appellants is not sufficiently supported by the evidence.

The established facts, shortly stated, are that the British steamship Taybank, which had come to New York from Shanghai, China, was docked on March 6, 1937, at Pier 4, United States Army Base, at the foot of Fifty Eighth street, Brooklyn, when about 4,000 ounces of opium were discovered hidden in her dunnage hatch and seized. The convicted defendants who have not appealed were members of her crew. The appellant Bonanzi was the man in New York who, the government claims, was to receive the opium from the ship with the assistance of Butto and Buda.

Evidence connecting Bonanzi with the conspiracy was found upon him after he was arrested and searched but, unless his arrest can be supported upon reasonable cause based in part upon information gained from his telephone communications intercepted by government agents, the arrest itself was unlawful. Moreover, the intercepted conversations were received in evidence over the objection that the interception was unauthorized and that they were inadmissible because of the violation of section 605 of the Communications Act of 1934. 48 Stat. 1064, 1103, 47 U.S.C.A. § 605.

The agents who did the wire tapping testified that they recognized the voice of Bonanzi as that of one of the speakers and related what they heard in each instance except one where a phonographic record was made. The conversation thus recorded was reproduced in court with the record in a reproducing machine. There was evidence that one of the voices was that of Bonanzi and that both speakers were in New York, making it an intrastate communication. The other intercepted communications introduced in evidence may have been either interstate or intrastate. On the assumption that the above-mentioned statute does not apply to intrastate communications, it is urged by the government that the record of the intrastate communication was sufficient without the other evidence gained by wire tapping which should accordingly be held but cumulative and its reception harmless error at most. Taking the assumption for present purposes, but without deciding the point, we are unable to agree that the isolated communication so intercepted was enough to make error in the reception of the rest harmless. One cannot be sure that but for the rest the jury would have found Bonanzi guilty. The conversation reproduced from the record was: "I can't do anything until it come back. When will it come back, do you know? It will be back next week. She goes away Friday to sea, tomorrow. It will be back next Thursday. Don't worry about the matter. O. K." As one of several conversations this might well have been given an effect which standing alone it would wholly lack.

If the other evidence obtained by wire tapping was part of interstate communications, it was error to admit it. Nardone

et al. v. United States, 58 S.Ct. 275, 82 L. Ed. ——, decided December 20, 1937. It was also error to admit it over objection raising the issue without showing at least prima facie that it was competent evidence. See Gray v. Maine Central R. R. Co., 114 Me. 530, 96 A. 1067. Even on the government's assumption as to the scope of the statute, it was necessary to make it competent evidence to show the intrastate character of the communications. And as a prerequisite to admissibility it was as necessary to do that as to show that Bonanzi was one of the speakers. The question of admissibility is one for the court to decide in advance of the reception of the evidence, and the burden is on the party offering the evidence. Very practical considerations make this so. And we need not go beyond the present appeal to demonstrate that. No defendant confronted with evidence gained by wire tapping whose only defense to it was that the witness had been mistaken in recognizing his voice as one of the participants in the conversation intercepted could be expected to show whether the eavesdropper had listened to an interstate communication or not. The party who seeks the benefit of evidence gained by wire tapping, assuming that it is ever admissible in a federal court, is the one who should know what kind of a communication was intercepted and be bound to disclose the fact. Certainly the decision in the Nardone Case, supra, would not reach far if the government could still introduce evidence obtained through the unauthorized interception of communications whenever its agents could intercept them without learning whether they were or were not interstate communications.

The evidence as to the connection of Butto and Buda with any conspiracy consisted only of testimony that they were seen with Bonanzi and were at one time in a boat with him near the Taybank when it was moored at Staten Island before it docked at Pier 4, United States Army Base, and that when arrested they were near the Fifty-second street pier in Brooklyn. Without more, this was not enough to prove them conspirators and the evidence of a Chinese, who is one of the convicted defendants not appealing, that he expected three white men unnamed to take delivery of the opium, did not tie these particular white men into the conspiracy charged. Proof of their participation knowingly in any conspiracy was lacking. Pelz v. United States, 2 Cir., 54 F.2d 1001. It was shown that they were junk buyers along the waterfront and had a boat licensed for that purpose. For ought that appears, they were using it as they lawfully might. Manifestly, they were not proved guilty under the substantive counts by such colorless evidence.

Judgment reversed as to Bonanzi. As to Butto and Buda the judgment is reversed and the indictment dismissed.