**UNITED STATES v. REED et al.**
No. 302.

Circuit Court of Appeals, Second Circuit.
May 9, 1938.

Henry A. Uterhart and Alfred M. Schaffer, both of New York City (Joseph Otis, of New York City, of counsel), for appellants June Reed and George Hammond.

Lamar Hardy, U. S. Atty., of New York City (Seymour M. Klein and Walter B. Lockwood, Assistant U. S. Attorneys, both of New York City, of counsel), for the United States.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

These appellants were tried and convicted in the District Court for the Southern District of New York on an indictment charging them with violations of the White Slave Traffic Act §§ 2, 3, 18 U.S.C.A. §§ 398 and 399, and with conspiring so to do. In each of three substantive counts they were charged with causing a woman named to be transported in interstate commerce for the purpose of prostitution; in each of three other counts they were charged with inducing a woman named to be transported in like commerce for a like purpose; and in a seventh count the conspiracy was charged. Appellant Reed was convicted and sentenced upon all counts to imprisonment and to pay identical fines.

The imprisonment sentences were made to run concurrently and the payment of the fine imposed under one count to "cancel the need for payment of fines imposed on the other counts." Two of the substantive counts, each relating to a woman who came to New York from Florida, were dismissed as to appellant Hammond. He was convicted on all the other counts and was sentenced on them in the same way as was appellant Reed.

Reliance is put upon three grounds for reversal. It is argued (1) that evidence gained by the unlawful interception of communications by telephone was erroneously admitted; (2) that a motion for a directed verdict of acquittal was erroneously denied; and (3) that appellant Reed, who voluntarily testified in behalf of the appellants, was compelled to answer questions upon cross-examination in violation of her constitutional right of immunity from self-incrimination.

One communication by telephone, which was a conversation appellant Reed in New York had with one Sally Kelly in Florida concerning some letters Reed had written Sally Kelly, was unlawfully intercepted by a witness who was permitted to testify, over the objection of the appellants, to what was said. This was error. Nardone v. United States, 302 U.S. 379, 58 S. Ct. 275, 82 L.Ed.——. This conversation concerned certain letters which appellant Reed had written Sally Kelly. A man in Florida was trying to get Mrs. Reed to pay him $200 for them, she told Miss Kelly, who then assured her that she need pay nothing for the letters had already been destroyed. But, while it was error to permit this witness to testify to the conversation he had unlawfully intercepted, the error was harmless, since both Miss Kelly and Mrs. Reed testified concerning that conversation and to the same effect as did the witness who had tapped the wire. Hartzell v. United States, 8 Cir., 72 F.2d 569; McLendon v. United States, 5 Cir., 14 F.2d 12. And the burden to show reversible error is on the appellants. Nash v. United States, 2 Cir., 54 F.2d 1006.

Two government witnesses also intercepted and testified as to many communications by telephone between appellant Reed and persons undisclosed as well as to some between appellants Reed and Hammond. They tended to show that appellant Reed, assisted by appellant Hammond, was operating a house of prostitution in New York City and that the girls named in the substantive counts of the indictment were prostitutes connected with such house. There was no attempt to prove that these communications were intrastate in character rather than interstate, though it is now said that as to many of them the inference that they were intrastate may be drawn from what was said. Perhaps this is so, but that will, in any event, leave some which were erroneously admitted because they may have been interstate communications. United States v. Bonanzi, 2 Cir., 94 F.2d 570. But there was ample evidence without any of that gained by wire tapping to prove beyond a reasonable doubt that appellants were doing what the intercepted communications indicated and that these girls were some of their prostitutes. No impartial jury could have found otherwise on the evidence had the erroneously admitted evidence not been introduced at all. And so no reversible error on this account was made to appear. Motes v. United States, 178 U.S. 458, 20 S.Ct. 993, 44 L.Ed. 1150.

The motion for a directed verdict was likewise properly denied. Indeed, the guilt of the appellants was overwhelmingly proved by competent evidence. It is true that in some respects this evidence was contradicted by the testimony of appellant Reed, but that only made guilt a question for the jury.

The jury had ample evidence before it to show that appellant Reed, while running a house of prostitution in New York, wrote a girl called Sally Kelly in Florida about the opportunities for the profitable practice of prostitution which would be hers if she came to New York to appellant Reed's house for that purpose. And that as a result of this and letters to like effect which appellant Reed wrote her Sally Kelly did come by train from Florida to New York to, and did, practice prostitution in New York under the direction of appellant Reed and as an inmate of the house of ill fame Reed was operating.

There was also ample competent evidence that both these appellants later went to Florida themselves for a vacation and previously arranged to have two girls who had been living as prostitutes in their apartment in New York go to Florida by common carrier to meet them there both for a vacation and for such practice of prostitution as an opportunity might be found; that appellants drove together from

New York to Florida by automobile after their plans had been perfected in New York and they had taken the girls, when fearful that their apartment would be raided, to the Hotel Windsor in that city; that they met the girls in Jacksonville, Fla., as had been previously planned; and drove with them to West Palm Beach, where they all remained some time for the purposes above mentioned. Indeed, it may be said that the evidence of guilt is so conclusive that the claim of error in the denial of the motion for a directed verdict rests only on the theory that what was done was neither cause nor inducement within the meaning of the above sections of the statute. In short, it is said that Sally Kelly was not induced to go from Florida to New York by appellant Reed because she testified that she had always wanted to go there and paid her own transportation expenses. On the same theory is based the contention that these appellants didn't cause the other two girls to go to Florida from New York by common carrier for purposes of prostitution. What appellant Reed did, however, was enough to justify the jury in finding that she brought about Sally Kelly's going to New York and what both appellants were shown to have done also justified the jury in finding that they brought about the journey of the other girls from New York to Florida. That was enough to bring the acts within the statute. United States v. Saledonis, 2 Cir., 93 F.2d 302; United States v. Kenofskey, 243 U.S. 440, 37 S.Ct. 438, 61 L.Ed. 836; United States v. Weisman, 2 Cir., 83 F.2d 470, 107 A.L.R. 293. And, of course, that these two appellants conspired to cause these girls to go to Florida from New York when they planned the trip is abundantly clear.

▮ The only remaining claim of reversible error relates to the cross-examination of appellant Reed. She voluntarily testified in behalf of the appellants and did thereby subject herself to cross-examination as to all relevant matters to the same extent as though she had never had any immunity from self-incrimination. Raffel v. United States, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054. Her cross-examination was kept within the issues. On the question of the purpose for which appellant Reed induced Sally Kelly to go to New York from Florida and both appellants caused the other girls to go from New York to Florida, it was relevant to show that they operated a house of prostitution in New York where Sally Kelly was to live and where the others had lived. Not so clear perhaps is the admissibility of her testimony admitting that she had later conducted a house of prostitution in New York, but even that did not offend against any right of immunity she had. Error, if any, (see, however, Alderman v. U. S., 5 Cir., 31 F.2d 499) was harmless.

Judgment affirmed.