### SABLOWSKY v. UNITED STATES and seventeen other cases.

Nos. 6502–6513, 6518, 6523–6525, 6566, 6567.

Circuit Court of Appeals, Third Circuit.

Dec. 9, 1938.

Albert Martin, Max V. Schoonmaker, Warren H. Van Kirk, John S. Pyle, and D. P. MacQuarrie, all of Pittsburgh, Pa., for appellants.

Charles F. Uhl, U. S. Atty., and John D. Ray, Asst. U. S. Atty., both of Pittsburgh, Pa., and Blair M. Ilderton, of Philadelphia, Pa., for appellee.

Before BUFFINGTON, THOMPSON, and BIGGS, Circuit Judges.

BIGGS, Circuit Judge.

The indictment in the cases at bar charges the appellants and others with a conspiracy to commit offenses against the United States in violation of Section 37 of the Criminal Code, R.S. § 5440, May 17, 1879, c. 8, 21 Stat. 4, March 4, 1909, c. 321, Sec. 37, 35 Stat. 1096, 18 U.S.C.A. § 88. Specifically the defendants below were charged with a conspiracy to manufacture, withdraw, transport, sell, remove, conceal and possess distilled spirits upon which revenue taxes had not been paid and to commit other crimes.

The United States contends that it has proved in accordance with the allegations of the indictment that the appellants Jake Sablowsky, Benny Sablowsky and Leonard Sablowsky, Sam Korenberg, Abe Shrinsky and Billy Birch, bought and procured nontaxpaid distilled spirits from persons operating illegal stills. Among these persons were the appellants Philip Piazza, James Totino, Fred Owens, Joe Parise, Sam Caldorni, Tony Caldorni, Sam Polito or Sam Epolito and Charles Murgie. The spirits so purchased from the persons named were sold to other individuals who operated speakeasies in and about Pittsburgh. Included in this last group are the appellants Harry Grob, Isaac Stein, Anderson Taylor and Nathan Sternberg.

The testimony through which the appellants were brought into the conspiracy and without which the United States could prove neither the conspiracy nor the appellants' connection with it, was procured by government agents' intercepting and divulging intrastate telephone communications between the parties to the conspiracy. Agents of the United States intercepted and recorded approximately sixteen hundred such telephone conversations. Five hundred or more of these intrastate communications were introduced in evidence during the course of the trial. Some of these conversations were in themselves criminal acts. If the communications referred to were properly admitted in evidence, the convictions of the appellants must be sustained. If the conversations were inadmissible, the judgments of conviction must be reversed. The issue presented for our determination is therefore a narrow one.

■ We state that 18 P.S. Pa. § 2014[1] makes it unlawful for any person con-

---

[1] The statute referred to is as follows: "In case any person, superintendent, operator, or [employee] who may in any capacity be connected with any telegraph or telephone line in this state, shall use or cause to be used, or make known or cause to be known, the contents of any dispatch sent from or received at any office in this state, or in any wise unlaw-

fully expose another's business or secrets, such person shall be deemed guilty of a misdemeanor, and upon being duly convicted thereof shall, for every such offense, be subject to a fine of not less than one hundred dollars or imprisonment not exceeding six months, or both or either, in the discretion of the court."

nected "* * * with any telegraph or télephone line in this state * * *" to divulge or cause to be known the contents óf any message. It is apparent, however, that this statute refers solely to the acts of officers or employees of communication agencies within the State of Pennsylvania. We therefore must deal solely with the Federal Communications Act of 1934, June 19, 1934, c. 652, Section 1 et seq., 48 Stat. 1064 et seq., 47 U.S.C.A. § 151 et seq. Section 605 of the Communications Act, 47 U.S.C.A. § 605, provides:

"No person receiving or assisting in receiving, or transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, to any person other than the addressee, his agent, or attorney, or to a person employed or authorized to forward such communication to its destination, or to proper accounting or distributing officers, of the various communicating centers over which the communication may be passed, or to the master of a ship under whom he is serving, or in response to a subpena issued by a court of competent jurisdiction, or on demand of other lawful authority; *and no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person;* and no person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by wire or radio and use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto; and no person having received such intercepted communication or having become acquainted with the contents, substance, purport, effect, or meaning of the same or any part thereof, knowing that such information was so obtained, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of the same or any part thereof, or use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto: * * *".

It is apparent that the determination of the question presented by the cases at bar turns upon the interpretation to be placed upon that portion of Section 605 in italics above. The appellants contend that Congress in enacting this part of Section 605 intended to lay down a rule in respect to the admissibility of evidence in the Federal courts and by the language employed intended to prohibit and did prohibit the admission in evidence of communications procured by wire tapping whether the intercepted communications were interstate or intrastate in character. The United States contends, however, that by the express terms of the Communications Act the prohibitions of Section 605 may be applied only to interstate communications and since those at bar were intrastate in character they were properly admitted in evidence.

Turning now to an examination of Section 605 we find that its first clause, that lying prior to the first semicolon, prohibits employees of communication agencies from divulging any interstate or foreign communication except upon lawful authority. Next occurs the clause which the appellants contend prohibits the consideration by the jury of the intercepted communications in the case at bar. It will be noted that the qualifying phrase "interstate or foreign" is omitted before the word "communication" and that the clause upon its face prohibits the intercepting or divulging of any communication whatsoever. The third clause obviously refers again to employees of communication agencies and provides that no person, not entitled, shall receive or divulge interstate or foreign communications or use them for his own benefit or for the benefit of others not entitled thereto. The fourth clause of the section provides that no person who has received an intercepted communication shall publish it or use it for his own benefit or for the benefit of others not entitled to receive it. This clause also omits the qualifying phrase "interstate or foreign" but refers simply to "such intercepted communication", obviously the communication designated in the second clause of the section. It follows therefore that if the section be accepted at its face value it does in fact prohibit employees of communication agencies from divulging, except upon lawful authority, making use of, or permitting others to make use of any interstate or foreign communications. This is the gist of clauses one and three. The section also prohibits any person from intercepting, divulging or making use of any communication. Such is the gist of clauses two and four.

Section 1, 47 U.S.C.A. § 151, setting forth the purpose of the Communications Act, states that it is to regulate "* * * interstate and foreign commerce in communication by wire and radio * * *". Section 2, 47 U.S.C.A. § 152, provides that the provisions of the chapter shall apply "* * * to all interstate and foreign communication by wire or radio * * *". This section also provides that nothing in the chapter shall give the Communications Commission jurisdiction of intrastate carriers except in certain cases not pertinent here. Subsection (f) of Section 3, 47 U.S.C.A. § 153(f), defines "foreign communication" as communication from the United States to or from a foreign country or a mobile station outside of the United States. Subsection (h) defines a "common carrier" or a "carrier" as "* * * any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio * * *". Subsection (e) defines "interstate communication" but specifies that it does not "* * * include wire communication between points within the same State * * *". Section 301, 47 U.S.C.A. § 301, states that it is the purpose of the Act to maintain control by the United States over all the channels of interstate and foreign radio communication. Section 406, 47 U.S.C.A. § 406, provides that the district courts of the United States shall have jurisdiction to compel by mandamus carriers to furnish interstate or foreign communication facilities without discrimination to those who desire to use them.

The Act nowhere defines "communication". The appellee contends that since the ordinary meaning of that word would include the conveyance of messages of any kind by any means, the phrase "any communication" contained in the second clause of Section 605 must be limited by an interpretation consistent with the express purposes of the Act and therefore the clause must be deemed to refer to that class and only to that class of communications with which the Act purports to deal, namely interstate and foreign communications by wire or radio.

The section sub judice has been before the lower courts of the United States a number of times and has been construed by the Supreme Court in one case, viz., Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314. We think that a discussion of these cases will prove helpful in the expression of our opinion.

In United States v. Bonanzi, 94 F.2d 570, the Circuit Court of Appeals for the Second Circuit held that the provisions of Section 605 of the Communications Act rendered incompetent testimony respecting interstate communications and reversed a judgment of conviction of the appellants because the United States could not distinguish between the interstate communications and the intrastate communications in evidence. The court however did not pass upon the question of the admissibility in evidence of intrastate communications, simply assuming for the purposes of the decision that these were admissible.

In Valli v. United States, 94 F.2d 687, the Circuit Court of Appeals for the First Circuit passing upon the applicability of the provisions of Section 605 to intrastate communications procured by wire tapping by government agents held evidence of such intrastate communications to be admissible. The court held also that Section 99 of Chapter 272 of Massachusetts General Laws (Ter.Ed.) could not serve as a basis for excluding the testimony of an employee of the telephone company showing the installation of telephones at certain places of business. The learned Circuit Judge delivering the opinion of the court referred to the limiting effect of Section 1 of the Communications Act, 47 U.S.C.A. § 151, to that of Section 2(a), 47 U.S.C.A. § 152(a), and to the first clause of Section 605, 47 U.S.C.A. § 605, which, since it purports to deal with employees of communication agencies, was within the purview of the decision. In a dissenting opinion Judge Morton stated [page 694], "The Nardone Case, passing by the constitutional question, holds in substance that conduct which is regarded by the public as so unethical that it is by statute specifically forbidden to persons generally is also forbidden to officers of the law, and that evidence obtained by officers in violation of such statutes will not be admitted in the federal courts."

■ In United States v. Plisco, D.C., 22 F.Supp. 242, a decision by the District Court of the United States for the District of Columbia, motions were filed by certain defendants to quash search warrants and to suppress the evidence seized thereunder upon the ground that the material evidence upon which the warrants were issued was obtained by police officers by means of tapping wires and intercept-

ing telephone communications passing between the defendants within the boundaries of the District of Columbia. The court, upon the authority of the Nardone Case, held that the material evidence so obtained was inadmissible in a criminal trial in a United States district court. In connection with this decision it must be borne in mind that subsection (e) of Section 3 of the Communications Act, 47 U.S.C.A. § 153(e), as we have stated defines "interstate communication" as communication "* * * from any State, Territory, or possession of the United States * * *, or the District of Columbia, to any other State, Territory, or possession of the United States * * * or the District of Columbia * * *" and also states that interstate communication "* * * shall not include wire communication between points within the same State, Territory, or possession of the United States, or the District of Columbia, * * *". It would seem to follow therefore that the decision of the learned District Judge construing the provisions of Section 605 in the light of the Nardone Case was based upon the conclusion that evidence concerning telephone communications intercepted by federal officers may not be received in a federal court irrespective of whether or not such communications are interstate communications within the purview of subsection (e). In reaching this conclusion as to the ruling of the court in the Plisco Case we are not unaware that the jurisdiction of Congress is plenary over the District of Columbia and that Congress has the power to prescribe a rule in respect to intercepting wire or radio communications within the District of Columbia different in character than that prescribed for the rest of the United States. Congress has not seen fit to do so, however, but by the definitions of the Communications Act has treated the District of Columbia in effect as if it were a state of the United States.

To come now to the decision of the Supreme Court in Nardone v. United States, supra. In the cited case the Supreme Court granted certiorari from a decision of the Circuit Court of Appeals for the Second Circuit reported in 90 F.2d 630. The lower court had held that Section 605 did not serve to make evidence of intercepted interstate telephone conversations inadmissible in evidence. Mr. Justice Roberts, delivering the opinion of the Supreme Court, stated the question under consideration to be, "* * * whether, in view of the provisions of section 605 of the Communications Act of 1934, evidence procured by a federal officer's tapping telephone wires and intercepting messages is admissible in a criminal trial in a United States District Court—* * *". He went on to state, "Section 605 of the Federal Communications Act provides that no person who, as an employe, has to do with the sending or receiving of any interstate communication by wire shall divulge or publish it or its substance to anyone other than the addressee or his authorized representative or to authorized fellow employes, save in response to a subpoena issued by a court of competent jurisdiction or on demand of other lawful authority; and 'no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person.' * * *

"Taken at face value the phrase 'no person' comprehends federal agents, and the ban on communication to 'any person' bars testimony to the content of an intercepted message. Such an application of the section is supported by comparison of the clause concerning intercepted messages with that relating to those known to employes of the carrier. The former may not be divulged to any person, the latter may be divulged in answer to a lawful subpoena."

In the cited case, the United States had contended that the provisions of Section 605 did not apply to federal officers engaged in their duties in bringing to justice violators of the law and urged that the Olmstead Case, Olmstead v. U. S., 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944, 66 A.L.R. 376, was governing in view of the fact that the provisions of Section 605 were practically identical with the corresponding section of the Radio Act of February 23, 1927, c. 169, § 27, 44 Stat. 1172.

In respect to this question Mr. Justice Roberts stated, "We nevertheless face the fact that the plain words of section 605 forbid anyone, unless authorized by the sender, to intercept a telephone message, and direct in equally clear language that 'no person' shall divulge or publish the message or its substance to 'any person.' To recite the contents of the message in

testimony before a court is to divulge the message. The conclusion that the act forbids such testimony seems to us unshaken by the government's arguments."

Now it is obvious that the question presented to the Supreme Court for its decision in the Nardone Case is a different one from that sub judice in the case at bar, since in the Nardone Case the intercepted communications were interstate in character. Moreover in the Nardone Case the Supreme Court passed upon the question of whether an exception in favor of the law enforcement officers of the United States should be granted in the face of the express language of Section 605. None the less the opinion in the Nardone Case casts illumination upon the question before us.

Our reason for so thinking is that the Nardone Case holds clearly that Section 605 creates a rule of evidence relating to the admission of intercepted wire communications sought to be divulged by officers of the United States in courts of the United States. No other interpretation can be placed upon this phase of the Nardone decision. It follows therefore that in the case at bar we must determine whether or not the rule of exclusion of evidence sought to be given by federal officers in courts of the United States is applicable to the testimony at bar of intercepted intrastate communications.

■ Before proceeding to express our views as to what we deem to be the correct interpretation of this question we should state that an examination of the Communications Act as a whole leads us to the inescapable conclusion that it was designed to the end that the Federal Communications Commission should have jurisdiction over and power to regulate within the terms of the Act all interstate and foreign communication and transmission of energy by wire and radio. Such is its primary purpose.

The Act contains six titles. The first contains general provisions relating to the application of the Chapter, the creation of the Commission and the designation of its powers and duties. 47 U.S.C.A. § 151 et seq. The second title relates to the common carriers engaged in interstate and foreign communication or transmission of energy by wire and specifies the duties imposed upon the Commission in respect to carriers. 47 U.S.C.A. § 201 et seq. The third title is like the second except that its provisions relate to communication or transmission of energy by radio as distinguished from communication or transmission by wire. 47 U.S.C.A. § 301 et seq. The fourth title contains procedural and administrative provisions. 47 U.S.C. A. § 401 et seq. The fifth title provides penal provisions and forfeitures. 47 U.S. C.A. § 501 et seq. The sixth and last title, in which Section 605 is written, contains miscellaneous provisions transferring jurisdiction of railroad telegraph lines from the Interstate Commerce Commission and Postmaster General to the Commission, repealing the Radio Act of 1927, making provision for the employment of officers and employees of the Federal Radio Commission, preserving pending suits, granting war powers to the President, and the rule of evidence set up by Section 605. 47 U.S.C.A. § 601 et seq.

■ It will be noted that the provisions of Section 605 are very different in their nature from those of the other sections of the Communications Act which in fact relate to the regulation of common carriers by wire and radio. The first and third clauses of Section 605 (as we have designated them), since they deal with acts prohibited to employees of communication agencies may be considered to be part of regulation of the carriers as well as constituting a rule of evidence. We think that this is so since it is apparent that the divulging of communications received in the course of their employment by employees of communication agencies might place a great burden upon interstate commerce. If the first and third clauses referred to are intended to relate to a phase of regulation as well as to constitute a rule of evidence, the limiting phrase "interstate or foreign" placed prior to the word "communication" in both of these clauses was aptly used by Congress to bring such regulation within the power of Congress under the Commerce clause. U.S.C.A.Const. art. 1, § 8, cl. 3. Upon the other hand the provisions of the second and fourth clauses of Section 605, which upon their face purport to relate to all persons, do not relate to the regulation of communication carriers and therefore constitute a rule of evidence in the purest sense. Congress must be deemed to have exercised its power within constitutional limitations. It possesses power to provide that Federal officers may not divulge in-

tercepted *intrastate* wire communications in a district court of the United States. Such a construction limits the broad language of Section 605 in a manner consistent with the constitutional power of Congress. We therefore may conclude that such was the intention of Congress. Becker Steel Company v. Cummings, 296 U.S. 74, 79, 80, 56 S.Ct. 15, 80 L.Ed. 54; United States v. Butler, 297 U.S. 1, 6, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914; Hopkins Federal Savings & Loan Association v. Cleary, 296 U.S. 315, 333, 56 S.Ct. 235, 80 L.Ed. 251, 100 A.L.R. 1403; National Labor Relations Board v. Jones & Laughlin Steel Corporation, 301 U.S. 1, 30, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352.

There is no helpful legislative history available in respect to Section 605 of the Communications Act or of the corresponding section (27) of the Radio Act of 1927.[2] The provisions of Section 605 seem to have been lifted almost bodily from Section 27 of the Radio Act of 1927. Certain changes were made by Congress in the language of the Communications Act which it may be argued are pertinent to the question of construction before us. For example, Section 605 of the Communications Act substitutes the qualifying phrase "interstate or foreign" in lieu of the word "radio" as used in the Radio Act before the word "communication". It can be argued that since radio communication may be intrastate as well as interstate, Congress in substituting the phrase for the word, made all the plainer the omission of the qualifying phrase from the second and fourth clauses of Section 605 thus pointing to the distinction between "interstate and foreign communication" and "any communication." Conversely it can be argued that radio communication is a rarity when it may not be intercepted at a point across a state line from the sending station and that therefore in drafting an act, viz., the Communications Act, designed to relate to communications both by wire and radio, Congress merely substituted an appropriate phrase of limitation in effect no broader than the qualifying word originally used.

The express language of Section 2 of the Act, 47 U.S.C.A. § 152, should not be construed in such a manner as to limit the application of the provisions of Section 605 to interstate or foreign communi-

cations by wire or radio as was held in Valli v. United States, supra. The omission of the qualifying phrase "interstate or foreign" before the word "communication" in the second and fourth clauses of Section 605 is too significant. The provisions of Section 2 of the Act, 47 U.S.C.A. § 152, which are general in that they purport to relate to the Act as a whole must give way before the specific and significant language of Section 605, later in order or arrangement in the Act. State of Missouri v. Ross, 299 U.S. 72, 76, 57 S.Ct. 60, 81 L. Ed. 46; Pennington v. Coxe, 2 Cranch 33, 2 L.Ed. 199; United States v. Jones, 131 U. S. 1, 9 S.Ct. 669, 33 L.Ed. 90; In re Slomka, 2 Cir., 122 F. 630, 631; Townsend v. Little, 109 U.S. 504, 512, 3 S.Ct. 357, 27 L.Ed. 1012; Kepner v. United States, 195 U.S. 100, 125, 24 S.Ct. 797, 49 L.Ed. 114, 1 Ann.Cas. 655; United States v. Daniels, 2 Cir., 279 F. 844, 849. No interstate or foreign communication by wire or radio may be deemed to escape the purview of the Act, but the provisions of Section 2 cannot be deemed to provide a limit to the scope of all of the provisions of the Act. We think that the conflict between the provisions of Sections 2 and 605 is more apparent than real. The words of Section 2 are not so inclusive as in fact to create a conflict with those of Section 605. Moreover it is a cardinal rule of statutory construction that effect is to be given if possible to every word, clause and sentence of a statute. United States v. Daniels, supra, page 849; Dwight & Lloyd Sintering Co. v. Reclamation Co., 2 Cir., 263 F. 315; Pillsbury Flour Mills Co. v. Great Northern Ry. Co., 8 Cir., 25 F.2d 66, 69; United States v. Greenfield Tap & Die Corporation, D.C., 27 F.2d 933, 934; North American Creamery Co. v. Willcuts, D.C., 38 F. 2d 483. It is our duty in so far as it is practicable to reconcile the different provisions of the Act, to render them consistent and harmonious and give effect to each. Moreover we are of the opinion that Congress intended the provisions of Section 605 as remedial and it is well established that statutes which are intended to be remedial in their nature are to be liberally construed. We hold therefore that Congress in enacting the rule of evidence embodied in Section 605 intended to provide and did in fact provide that evidence of intrastate communications procured by federal agents by tapping telephone wires

---

[2] Act of February 23, 1927, c. 169, Sec. 27, 47 Stat. 1172.

is inadmissible in a district court of the United States.

We think that such an interpretation of the provisions of Section 605 is common sense. The ethical problem with which Congress was engaged and which it apparently sought to solve by enacting Section 605 is identical whether the communications intercepted and offered in evidence be interstate or intrastate in character. Nor would an interpretation of Section 605 commend itself to reason whereby certain intercepted communications could be received in evidence while others procured through the medium of an identical tapped line would be inadmissible.

In reaching this conclusion we are not unmindful of the additional burden which it will place upon law enforcement officers acting in good faith in the discharge of their duties. We may not allow this consideration, however, to affect what we deem to be the correct interpretation of the provisions of the statute.

The record discloses that no specific objections were taken by the appellants to the introduction in evidence of the testimony procured by wire tapping on the ground that such admission would constitute a violation of Section 605 of the Communications Act. Nor do the assignments of error deal with the question at bar. Following the decision of the Supreme Court in the Nardone Case argument was had upon the substantive questions of law involved in the interpretation of the provisions of Section 605 and the United States attorney raised no question as to our right to consider the substantial questions raised, the United States apparently desiring a determination upon the merits. It is our opinion that we may consider the substantive question presented and may determine it because to do otherwise would result in a miscarriage of justice since we look upon the admission of the wire tapping testimony in the cases at bar as plain error requiring reversal. Church v. Hubbart, 2 Cranch 187, 2 L.Ed. 249; Grau v. United States, 287 U.S. 124, 53 S. Ct. 38, 77 L.Ed. 212. Compare Ford v. United States, 273 U.S. 593, 47 S.Ct. 531, 71 L.Ed. 793.

Accordingly the judgments of conviction of the respective appellants are reversed and the causes are remanded for further action in accordance with this opinion.